at all versus Diana Law, King County Public Guard on behalf of the at-large, Ms. Phyllis J. Perko, on behalf of the at-lay, Mr. Patrick M. Connell. Thank you, Ms. Perko. Good afternoon. Good afternoon. May it please the Court and Counsel, this case arises from a disabled adult proceeding. I represent Richard Yanni, the appellant, who was the respondent in a citation proceeding under the Probate Act and suffered an adverse judgment in the course of those proceedings. It's our position that the record on appeal supports a factual background in which Mr. Yanni, who is the son of the disabled adult, had an agreement beginning in 2004 to buy a residence together and to live in that residence, with the further agreement being that the son would pay most of the expenses attributable to the residence, most significantly the mortgage and upkeep and improvement of the premises, while the mother promised to gift the real property to him. In fact, a number of years later, and specifically in the year 2012, there was a quick claim deed from the mother to the son and his wife. The trial court found that this deed was the result of undue influence by Mr. Yanni, Richard, and as a result, imposed a constructive trust of $150,000 on the real property, also awarded punitive damages and attorney's fees. The structure of this judgment order is such that it removes from Mr. Yanni's control the entire fair market value of the property. We've presented multiple arguments on appeal, and it's unlikely that time would allow us to address each of them unless the court directs otherwise. This afternoon, we would primarily be addressing the matter of the pleadings and proof, the cause of action, or causes of action in this case, and the imposition of the constructive trust as a remedy. We would submit to your honors that the underlying premises and rules of law that are significant in this case start with the presumption of gift that applies to transfers between a parent and child. And two additional... Wasn't that presumption rebutted here with the factors that his mother was aging, she was more and more dependent upon him? Well, an entire argument of our brief, I believe it would be argument two, is devoted to a discussion of what we consider is the evidence in this case. And it's our position that there is simply no evidence that the mother was at all dependent upon her son. She still had all of her faculties and was still thinking properly? Well, for instance, the only testimony that we have specifically on that point would be the testimony of Richard Yanni, my client, and the testimony of a disinterested witness, a notary, who witnessed the deed in 2012. And the testimony of both of them, the facts being described in the argument that consisted their testimony, would support the conclusion that Patricia Yanni, the mother, was not disabled at that time and was in possession of her faculties. That deed was signed in 2012. It was recorded in 2012. The disabled adult proceedings in this case were initiated in 2013. So as the record stands, it is our position that there is no evidence that would indicate an intermingling of financial affairs except for the co-ownership on the house. But no intermingling of financial affairs, no caring for financial affairs of his mother by the son, no position of dominance. The mother lived in separate quarters within the residence and the care that was provided by the son, the only evidence in that regard, was that he took his mother to the grocery store occasionally and that his wife attended a doctor's appointment with her. But the further testimony was that she led an independent life, that she was driving, and that she had friends over to the house. So there's no evidence in the record that supports... Why would she quit claim to Joy if the agreement was only with her son? Well, I can think of reasons, but there's no specific reason in the record. Well, you're basically saying she's not only gifting him, she's now gifting her daughter-in-law as well. Well, that is a fact, but I don't think that it is unusual for a parent to view an in-law as... Well, isn't she breaching the contract with her son to the extent that by giving a third or joint tenancy rights to someone other than the party that she's already agreed to become a joint tenant only with him would seem to be a breach of the contract to the extent that he's supposed to get title? And why, if in fact the agreement was that Joy should get it, why didn't he also quit claim in the same deed a joint tenancy to Joy? Well, I think that conceivably there could be a situation in which Richard would not have wanted the home to be quit claim to his wife, and I suppose in that situation that he could have argued that there was a breach of contract. But on the other hand, I would submit to the court that it is not unusual in familial situations for agreements to change and to be particularly when it comes to an in-law. So, I mean, I think if we were talking about a breach of a contract, that would be Richard's action against Patricia, and I don't think that that in any way is suggested by the record in this case. Well, he'd bring an action against her. All she is is a recipient of a quit claim. He would probably have to do what his mother would ordinarily do, and that is seek a remedy against him. He should in turn have sought a remedy against her for an improper transfer, not necessarily sue Joy. Well, no, I'm not suggesting that he would have sued his wife. I'm saying that he would have sued his mother if he were claiming that there were a breach of his initial agreement. But I don't think that, with due respect to Your Honor, that problem is presented in the case at bar, and I would rest on my position that it's not unusual for a parent to view a daughter-in-law or a son-in-law as a member of the family and equivalent to a son and daughter in certain situations. So, and I further would submit to Your Honor that, I mean, enforcement of the agreement was something that would have lay in Richard's hand, and we're dealing here with a situation where the guardian of the estate has pursued citation proceedings against the son. You also claim that the proceedings were improperly brought as a conversion. I do. And if it was, what's the remedy? They're going after the equity in real property. Is that your point, right? Well, there isn't even any equity. Well, if there were, that's what they'd be going after. If there were, presumably. But what they're going after is the down payment that Patricia, the mother, made into this real property in 2004. Now, the wrongdoing, if any occurred in this case, if there could be any cause of action because of wrongdoing by my client, that wrongdoing occurred in 2012, eight years after the down payment was made. And the asset that my client received is titled to real property. So the remedy, if this court finds that there was wrongdoing and affirms the trial court on that fundamental question of tortious activity, if this court affirms that finding on whatever ground, then the remedy is to return the asset that was taken. And the asset that was taken was the title to property. It is possible to return that property, and this distinguishes this case from cases that, or a case that the guardian cites, where it is impossible to return the asset. But there are two reasons why the constructive trust for $150,000 is improper. And the first has to do with the plain language of the citation provision itself. The citation provision itself makes a clear distinction between return or delivery of personal property or the proceeds of personal property, books of accounts, all of that personality, evidence of debt, all of that personality on one hand versus title to land. So this is a title to land, and the only thing that the citation provision allows recovery for in this regard is the title to land. Likewise, with reference to a constructive trust, which is consistent, a different theory, but consistent with the interpretation of the citation provision that I have just advanced and certainly advanced in my brief. But additionally, for a constructive trust, there must be a race, there must be identifiable property. And specifically, when we are talking about money, there must be a specific and identifiable fund of money in order to have a constructive trust. And this really proceeds from Eichner versus Gross, which is- I think when I asked you about what's the remedy, I meant are we remanded for further pleadings? Is it an outright reversal? Does the constructive trust stay intact, but the attorney's fees and the punitive damages, do they get wiped out? What is it that you're seeking? Well, we submit it's an outright reversal because there was no cause of action proven. And in order to- the law is clear that in a citation proceeding- Well, there probably was a cause of action proven. It just isn't necessarily, as you were saying about three minutes ago, it's not the type of cause of action that's appropriate in a citation proceeding. Well, I'm not sure on which basis Your Honor believes the cause of action was proven, but obviously- Assuming that the quitclaim deed was made under duress or fraud, then you have a cause of action in fraud. Certainly you would have a cause of action for undue influence for constructive fraud. Breach of fiduciary duty. Breach of fiduciary duty. There's a question about that. If the deed had been acquired by coercion, duress, dominance in a fiduciary relationship, all of those ways to establish fiduciary relationship, a breach of fiduciary duty or actual coercion or duress, undue influence, yes, in those circumstances some cause of action would have been proven. And then you would only be looking at the constructive trust question and the punitive damages and the attorney's fees. And the remedy would be to return the title to the real property. We, of course, deny that any cause of action was proven, that there are any facts in this record. So what we're primarily asking for is a reversal without remand. Any questions? Thank you. Thank you, Your Honor. You'll have an opportunity to make rebuttal. Yes, Your Honor. Mr. Connelly, you may proceed. Thank you. Unfortunately, I don't agree that Richard Yanni and his mother agreed to buy this house in 2004. I know you'll look at the record and you'll see that on November 15, 2004, my client, who is a disabled adult, bought the house on her own. And the reason she bought that house is because Mr. Yanni was in a divorce proceeding and did not want to be on the title. He moved in later. Phyllis was not at, or Ms. Perko was not at the trial, so I'm not trying to take advantage, but that is a fact. Well, you said the reason why he wasn't. Does that mean he would have been on the title had he not been in a divorce? That I don't know. That I can't tell you. All I know is that she had sold her house, the equity of her house, and she was going to buy this house and she bought it on her own. I can't... There's no doubt that at that time she was fully alert. Absolutely, Justice. So, to Ms. Perko's point, you're not disputing that if there's any tortious conduct that occurred in 2012, not earlier, correct? My complaint stands with respect to the issue that he converted my client's interest in this property at the time the deed occurred in August 1st, 2012. That's correct. Can I ask you this? What facts were there in the record that you can point to that show that Mr. Yanni exerted undue influence over his mother? What are the facts, not the conclusions? What are the facts? Well, over the period of about eight years, there were three refinances of this property. During that period of time, he alleged that he put $250,000 of his own money into the property, an additional $90,000, and took equity lines of credit. He said at his deposition that his mother could move in with him and live there for free. And at the trial, he was impeached with that when he said that she had to pay half the taxes, the utilities, and the like. The testimony from the guardian in light of Mr. Serafin, which was filed with the court in April of 2013, indicated that fact. In fact, it was his advice to Judge Grady, as well as the public guardian, to pursue this matter because he believed that at that time, in April of 2013, that Patricia was going to need the money. That's why we brought this citation proceeding. I believe there's ample and in fact— You're basically—and I understand that. I read the brief. But the inference is there that there was undue influence. That is what you're saying. There is an inference with respect to the fact that he had this power of attorney. There was testimony from the public guardian who met with Ms. Yanni on various occasions at the Geneva Rehab Facility. And she relied on those discussions. She relied on the guardian's report, which she was entitled to do. And she gave her opinion that in her opinion there was undue influence, as well as a breach of fiduciary duty. And the other thing with respect to these two theories that the appellant relies on, no one ever brought up in the trial court the issue—these issues with respect to fiduciary duty in their post-trial motion. It's not there. They never argued those. And in fact, they never argued the issue with respect to equitable apportionment on the attorney's fees, either. I know if you'll have the time to look at the record, which I know you'll do, you'll see that the argument that was made on that theory was the American rule. In fact, that my client wasn't entitled to any attorney's fees because the lawyer who argued that motion was under the mistaken belief that there was no provision in the Probate Act with respect to the payment not only for the guardian, but for the guardian's attorney. And I cited that, I believe, at page 25 of my brief. We believe in this case that we proved that the equitable interest that my client had in that property was of value under 16-1D of the recovery citation provision. We also believe that under 16-1A that conversion is applicable because it says so right in the statute. Moreover, we believe that based on the Lashman case, which I know is at some odds with uses, which the Second District opined on in 2008, is dispositive here. What does it say in the statute that would indicate that a conversion applies to an interest in real estate? It says that the trial court may make all rulings and orders with respect to titles and land in real estate. That's what it says, Judge. And that's what the judge did here. He did not say... But that isn't what you pledged, is it? It's like conversion. I pledged. Absolutely. It is a conversion of personal property, and I'm not aware that an equitable interest in land is personal property. It might have been, had this been... Was this in a land trust? No. Can you address, to Justice McLaren's point, the NADIGE v. Schaffone Builders, which stands for the proposition that an action for conversion is not a remedy for obtaining title to real estate? We did not ask for the title to the real estate. If you'll go back and look at my complaint... But it's still... I will address it. I'm not trying to dodge it. Okay. I think the Lashman case stands for the same proposition that you have in front of you. And Lashman says that in that case, Christine, who had an interest in a tractor for $55,000, and she had this arrangement with her mother, where when she traded the tractor, she would pay the mother the fair market value. In that case, the 4th District held, even though the tractor had been sold, and even though the only thing left was the cash or the money, that she... that the estate had an interest in the sale of that tractor. They distinguish your case in uses, which was based on a criminal restitution judgment, and said it was not a debt, it was a credit, and therefore it was attachable in recovery under 16.1. The only problem I have with your analogy, and I call it an analogy because a tractor is not real estate... Do you have a case citation that relates to a similar determination that when you convert real estate in cash, that you can then claim that the cash is converted funds? I do not, Judge, and I could not locate one. And I don't think there's one that exists. And the analogy I have is that the value of the real estate is not what we seek. It's not the real estate itself. So let's assume that you have improperly pled conversion in a case where maybe partition or fraud or seeking a determination of title to property, in which case you could have determined that she was a joint tenant and reinstate or essentially abrogate the quitclaim deed, in which case you could then attempt to sell her interest in the property. But since, assuming hypothetically that this is a conversion which is not allowed on real estate or interest in real estate, if we reverse the judgment, what do we do? Do we remand it for further proceedings? Is it an outright reversal? What is it? Well, I think you have the authority under Rules 362 to permit me to amend my pleadings in the appellate court, because I think the evidence here was clear that not only did Mr. Yanni not do anything with respect to... You're talking about the rule that says something like we as the appellate court have the authority to enter any order the trial court did? No, I'm not saying that. I'm saying that if you're going to reverse it, I think I have the right to amend my pleadings with respect to if you determine that conversion is not a proper remedy. What was the citation you gave? I believe it's Supreme Court Rule 362. Well, that's a plea before a final judgment. There's a final judgment here. I don't think there is a final judgment. Well, what's the section? I think it's 362, Judge. The appeal was taken from the order imposing the constructive trust. That's correct, Judge. So your point is, your position is that it's not a final order? It's not a final order, because... Until the money's finally recovered? Pardon me? Until the $150,000 is finally recovered, when does it become a final order? Well, the trial court never did enter any calculation with respect to the amount of the attorney's fees that were owed. That has not happened. Just said all of those. I'm not sure... Then why do we have jurisdiction over this case? Where are we here? You'd have to ask Mr. Perco that. I have another question. The trial court made a finding that the signature on the quick claim deed of Mrs. Yanni was a forgery. I think what he said, if I could paraphrase it, he was not in the business of handwriting analysis, but based on what he viewed it, he did not think it was the same signature as one that she had signed a couple years earlier. I think it was, correct? I think it was on the power of attorney or deed. So if it's... if you're going to forge a signature, why do you need to exert undue influence? I didn't call Mrs. Wilson... Who argued that it was a forgery? I never argued that it was a forgery. The judge made that determination. My... Mrs. Wilson was offered by Mr. Yanni as a witness, and the only thing that I was able to do on cross-examination was to show that her statement that she notarized the deed, I believe, on July 24th, that's when she said she notarized it. She did not notarize the deed on August 1st, and that's the operative deed. And I left that up there. I never asked her any questions after that. From that, I believe the trial court made the determination that he felt the deed was suspect, and he used that term. I don't think... I may be wrong, but I don't believe I ever argued it was a forgery. The other thing that I think... I just want to say I don't have too much more time, but I think the other thing that concerned the trial court in this case was the fact that during the course of these proceedings, I issued a subpoena to Mr. Yanni with respect to the production of records for all the supposed transactions he was involved in, including the payments, the money, and so forth. The real estate, taxes, mortgage, et cetera, and he never produced any of it. And I think that concerned the trial court as well as it should. Subpoenas are important documents, important orders of the court, and I believe he drew an adverse inference with respect to that under... if it had been a jury trial under Section 501 of the IPI. So we believe the trial court was correct. We believe that conversion is permitted. We do not believe that we were attempting to allege conversion in real estate. We were alleging that my client's equity was converted. We're relying on a last-minute case. We believe we distinguished that in connection with usage with all due respect. And the other issues with respect to the attorney's fees I think are waived because it was never argued. And indeed, most of the arguments with respect to punitive damages were never brought up in a post-trial motion. Didn't the trial court rule that punitive damages were the value of the property? The trial court ruled that the punitive damages were $400,000. The property was purchased on November 15, 2004 for $540,000. I don't know exactly, to be quite honest with you, where the judge came up with the $400,000. I assume that's what it is. I don't think he specifically said that, Judge. Okay. But you have his reasoning, you have his opinion. I don't answer any other questions that you have. On behalf of my client, I want to thank you, your staff, Mr. Mangan, your reporters for listening to us today. It's an important case. I know it's important to you. It's important to my client. Thank you. Ms. Perko, do you have a problem? Well, briefly, in answer to the forgery question that was alleged by Mr. Connelly in paragraph 17 of his amended petition, or for citation proceeding at C-194 of the record that's in the appendix to the brief. So that's where this idea came from, although there's no proof on the issue. Regarding the matter of the subpoena in this case, I'm going to characterize my opponent's position as something like litigation by ambush. Granted, the subpoena was served, and there's a specific discussion in my brief regarding the subpoena matter. There's a general description in the subpoena of what documents are. You see that in a lot of discovery motions or subpoenas. But the precise request for documents was clearly one that pertained to deeds and mortgages and that type of indebtedness, as opposed to evidence about the expenses for the property. Never in the trial court proceedings did the guardian of the estate complain about the production pursuant to the subpoena, except with reference to Mr. Yanni's counsel's attempt to introduce into evidence photographs of the premises in the downstairs part of the residence where Patricia lived. And at that point, the guardian's complaint was that the photographs hadn't been presented. Meanwhile, counsel for Mr. Yanni made the representation that she had complied in all respects with the subpoena. So if the allegation is that the subpoena covered expenses and checks and that type of thing, it's our position that Mr. Canale or the guardian of the estate should have made a complete and specific objection or demand for performance under the subpoena, because truly, counsel for Mr. Yanni and the record so reflects believed that she had complied with the subpoena. There are other arguments attended to the subpoena issue in our briefing and we'll rely on those. We also have covered in our brief the issue of the supposed impeachment of my client regarding his statement in deposition that his mother could live free in the premises and his further description in his trial testimony that in fact she paid one half of the property taxes annually and some other, I believe, perhaps cable expenses and maybe some other utility contributions. I would submit that impeachment, though it may be, it is of the most minor nature and certainly does not impeach the fundamental testimony that the son's expenditures for the premises were far in excess of those of the mother. She paid half the taxes? The taxes. And how much were the taxes? Your Honor, I don't know that. I mean, I think. Substantial. I think perhaps, you know, maybe they, I don't know. I mean, but just on common knowledge of what taxes might be in Kane County, I mean, I would assume they would be in excess of $10,000 a year. So I would assume based on the cost of the, you know, what the value of the residence was. But with reference to these refinances that occurred, I think all you have to do is look at those photographs of the downstairs that eventually did come into evidence and you can conclude that a substantial amount of money was paid in renovation of those premises. Now, I think it's also unlikely, given the way that Mr. Yanni's siblings swooped down when mother did apparently become disabled. I think it's unlikely that anything was happening during the previous. Periods. Correct. That would have indicated any kind of disability. I mean, even, even the power of attorney was so carefully drawn to limit Mr., my client's, the son's ability to engage in a refinance of the property and nothing else. And it was thereafter formally revoked. So, I mean, there is nothing in these circumstances that tend to show a dependence or some lack of understanding by the mother before she was declared disabled in 2013. And just briefly with reference to the value, I mean, Mr. Canale's argument today is substantially to the effect that they were seeking the value in this residence. The unchallenged testimony is that the fair market value of the residence was $499,000 at the time of trial. And that it was encumbered with first and second mortgages amounting to $513,000. So in the common existing real estate parlance of these days, it was well underwater. So there isn't a value. And this is particularly significant because the case law and the statute require for there either to be retrieval of assets through a citation proceeding or imposition of a constructive trust. Or for that matter, a cause of action based on conversion, that there be an identifiable sum, an identifiable asset of the estate. And there is no asset of the estate in 2012 or 2013 when the proceedings were brought as it applies to this case except the interest in real estate. To Mr. Canale's point that you believe under 304, there clearly is jurisdiction. Absolutely. Absolutely, I do, Dan. And I mean, it's the nature of what the court ordered in this case. There's nothing that the court left undone.  He charged my client with punitive damages up to the amount of the, everything remaining after the $150,000 constructive trust and after the payment of the attorney's fees, everything else up to the appraised value of the property. I mean, while this may be slightly vague, there was nothing more to be argued. There was nothing more to be decided. We'd ask for a reversal or the alternative relief that we've paid for in our complaint of today. Thank you, Your Honor. Thank you. The case will be taken under advisement. There'll be a short recess. We have a lot more cases.